# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RICHARD ARNOLD, et al.,

    Plaintiffs,

       v.

SECRETARY OF THE NAVY, et al.,

    Defendants.

Civil No. 19-2755 (JDB)

## MEMORANDUM OPINION

This action is the latest in a long-running series of cases filed in this Court and elsewhere around the country by a group of Protestant U.S. Navy chaplains against the Navy, alleging that the Navy discriminated against them on the basis of their faith. Previously, as relevant here, three such cases were consolidated before this Court. In 2018 (after more than a decade of litigation), the Court granted summary judgment to the Navy on the bulk of the chaplains' claims.[1] See In re Navy Chaplaincy, 323 F. Supp. 3d 25, 29 (D.D.C. 2018). The chaplains' claims had consisted of both "systemic" claims—broad challenges to various Navy selection board policies and procedures—and "ad hoc" claims—discrete instances of discrimination against individual plaintiffs. The Court's 2018 opinion and accompanying order rejected all the chaplains' systemic claims but left three ad hoc claims standing for future resolution: constructive discharge, retaliation, and interference with the form of prayer. See Nov. 8, 2018 Order ("Severance Order") at 1, In re Navy Chaplaincy, No. 07-mc-269 (D.D.C. 2018), ECF No. 344. That 2018 opinion is currently before the D.C. Circuit on appeal. See In re Navy Chaplaincy, appeal docketed, No. 19-5206 (D.C. Cir. 2019).

---

[1] That case was transferred to the undersigned judge in 2017 after a decade of litigation before two other district judges, interspersed with several trips to the D.C. Circuit.

Following the Court's summary judgment opinion, the chaplains and the Navy filed a joint motion to sever the remaining ad hoc claims. Joint Mot. for Severance of Claims ("Joint Severance Mot."), In re Navy Chaplaincy, No. 07-mc-269 (D.D.C. 2018), ECF No. 342. Under Federal Rule of Civil Procedure 20(a), plaintiffs may join in a single action if they both (1) assert claims "arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) those claims involve "any question of law or fact common to all plaintiffs." Fed. R. Civ. P. 20(a). The parties jointly represented to the Court that they did not believe that, "shorn of the systemic claims," the remaining ad hoc claims satisfied either of Rule 20(a)'s prongs. Joint Severance Mot. at 4. The claims did not satisfy the first prong, the parties stated, because they "concern[ed] varying discrete instances of conduct that involve different plaintiffs, different witnesses, different events, in different locations, and at different times," and moreover they would "involve substantially different evidence and would likely involve different defenses," such that "there [was] no reason to believe that consolidating them would promote trial convenience or expedite their resolution." Id. at 3–4. Nor, according to the parties, did the claims satisfy the second Rule 20(a) prong, because they did "not share any common factual or legal nucleus." Id. at 4. Therefore, the parties requested that the Court sever the claims and allow "any Plaintiff who wishes to refile" to do so within a prescribed period; any claims that were not "refiled as separate actions" by the end of that period were to be dismissed with prejudice. Id. at 4–5.

The Court accepted the parties' representations, agreed with their well-reasoned arguments that the ad hoc claims did not satisfy either of the Rule 20(a) prongs, and granted the motion. See Severance Order at 1–2. Accordingly, the Court severed the individual claims and ordered that "any plaintiff . . . who wishes to refile his or her claims for constructive discharge (Count 11), retaliation (Count 12), and/or interference with the form of prayer (Count 9) shall do so, in any

2

appropriate venue, within ninety (90) days of the issuance of this order, or else his or her claims will be dismissed with prejudice." Id. at 2. The chaplains later moved for an extension of time to refile their severed claims to March 1, 2019, and the Court granted that motion as well. See Jan. 24, 2019 Minute Order, In re Navy Chaplaincy, No. 07-mc-269 (D.D.C. 2019).

On the last day of that filing period, the instant action was filed in the U.S. District Court for the Eastern District of Virginia. The complaint, which once again joins together twenty-seven of the plaintiffs from Navy Chaplaincy, asserts five counts against the Navy: (1) what it calls an "illegal retaliation" claim; (2) a challenge to the constitutionality of 10 U.S.C. § 613a; (3) what it calls a "constructive discharge" claim; (4) a claim that "the Navy has discriminated against non-liturgical chaplains' religious free speech"; and (5) violations of the Religious Freedom Restoration Act ("RFRA"). See Compl. ¶¶ 18–33. Moreover, the complaint states that joinder is now appropriate because "[c]areful analysis of plaintiffs' underlying claims show common themes of retaliation occurring at specific locations, arising from the same or similar sources and common expressions of retaliation and religious hostility." Compl. ¶ 5.

The Navy took issue with the complaint and promptly filed a motion to transfer the case from the Eastern District of Virginia back to this Court. See Defs.' Mot. to Transfer Venue [ECF No. 9] at 1. In the Navy's view, despite dressing them up as "retaliation" and "constructive discharge" claims, the new complaint for the most part actually reasserted the very same systemic claims that this Court had already resolved in its summary judgment opinion; moreover, the Navy argued, the ad hoc claims were improperly joined, contradicting plaintiffs' representations in the joint motion for severance that joinder was inappropriate. See Defs.' Mem. in Supp. of Mot. to Transfer Venue [ECF No. 10] at 1–2. Given the "blatant disregard" for this Court's Severance Order that plaintiffs had shown, the Navy contended that justice would be best served by

transferring plaintiffs' "recycled claims" back to this Court, which is "fully versed in the twists-and-turns" of the case, for resolution. Id. at 2. Judge Morgan agreed, granting the Navy's motion as to twenty-five of the plaintiffs.[2] See Opinion & Order [ECF No. 26] at 10.

With the case having now been transferred to this Court, the Navy has filed a motion to dismiss, arguing that (1) four of the five counts asserted in the complaint should be dismissed as barred by "res judicata principles," and (2) the Court should sever the claims of the five plaintiffs who improperly joined their otherwise proper ad hoc claims in Count Four and permit refiling of those claims only upon leave of this Court. See Defs.' Mot. to Dismiss Compl. ("MTD") [ECF No. 29] at 1–2. The matter is now fully briefed, and the motion is ripe for decision.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint." Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). To withstand a motion to dismiss, the complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (footnote and citations omitted). In evaluating the sufficiency of a complaint, the Court considers "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997). Dismissal is appropriate if the plaintiff's claims are defeated by a defense that appears on the face of the complaint. See Smith-Haynie v. District of

---

[2] Judge Morgan denied the motion as to the last two plaintiffs, concluding that because they resided in the Eastern District of Virginia, they were on stronger footing to file in that district than were the rest of the plaintiffs, who did not reside there and whose "decision to file in [the Eastern District of Virginia] should be accorded little weight" in the venue-transfer analysis. Opinion & Order at 9.

Columbia, 155 F.3d 575, 578 (D.C. Cir. 1998) ("[A]n affirmative defense may be raised by pre-answer motion under Rule 12(b) when the facts that give rise to the defense are clear from the face of the complaint."); Nader v. Democratic Nat'l Comm., 590 F. Supp. 2d 164, 169 (D.D.C. 2008) (courts "allow[] parties to assert [res judicata] in a motion to dismiss when 'all relevant facts are shown by the court's own records, of which the court takes notice.'" (quoting Hemphill v. Kimberly-Clark Corp., 530 F. Supp. 2d 108, 111 (D.D.C. 2008))).

## Analysis

### I.      The Retaliation, 10 U.S.C. § 613a, Constructive Discharge, and RFRA Claims

The Court first addresses the Navy's various related arguments that four of the five counts asserted in the chaplains' complaint are merely impermissible repackagings of claims that this Court already resolved in its 2018 opinion in the Navy Chaplaincy case.

#### A. Res Judicata Principles

In general, res judicata "bars relitigation of claims and issues that were or could have been litigated in a prior action." Alaska Forest Ass'n v. Vilsack, 883 F. Supp. 2d 136, 141 (D.D.C. 2012). "Under well-settled federal law, the pendency of an appeal does not diminish the res judicata effect of a judgment rendered by a federal court." Hunt v. Liberty Lobby, Inc., 707 F.2d 1493, 1497 (D.C. Cir. 1983). Res judicata encompasses two interrelated doctrines: claim preclusion and issue preclusion. See Taylor v. Sturgell, 553 U.S. 880, 892 (2008).

Claim preclusion applies to foreclose "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." New Hampshire v. Maine, 532 U.S. 742, 748 (2001). The doctrine therefore "focuses on whether the same cause of action is implicated in both the initial and subsequent lawsuits, meaning the two lawsuits share the same nucleus of facts." Theodore v. District of Columbia, 772 F. Supp. 2d 287, 293 (D.D.C. 2011)

(internal quotation marks omitted); id. at 293 (noting that under claim preclusion, parties cannot "mask [their] argument under a new legal theory" where the claims "ultimately rely on the same factual nucleus" (internal quotation marks omitted)).   A subsequent claim is barred by claim preclusion "if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." Smalls v. United States, 471 F.3d 186, 192 (D.C. Cir. 2006).

Issue preclusion applies to bar "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." Sturgell, 553 U.S. at 892 (internal quotation marks omitted).  For a prior holding to preclude an issue, three requirements apply: "First, the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case.  Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case.  Third, preclusion in the second case must not work a basic unfairness to the party bound by the first determination." Yamaha Corp. of Am. v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992) (citations omitted).

With some limited exceptions, see Sturgell, 553 U.S. at 893–95, both doctrines apply to preclude subsequent litigation of claims and issues only for persons who were parties to the earlier suit, in order to uphold the "deep-rooted historic tradition that everyone should have his own day in court," Richards v. Jefferson County, 517 U.S. 793, 798 (1996) (internal quotation marks omitted).  At bottom, by "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," the two doctrines "protect against the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action

by minimizing the possibility of inconsistent decisions." Sturgell, 553 U.S. at 892 (quoting Montana v. United States, 440 U.S. 147, 153–154 (1979)).

### B. The Retaliation and Constructive Discharge Claims

Count 1 of the complaint asserts a claim for illegal retaliation, alleging that the Navy retaliated against plaintiffs by employing "practices" and "procedures" on selection boards that discriminated against non-liturgical chaplains, ultimately resulting in plaintiffs' being passed over for promotion or forced into early retirement. See Compl. ¶¶ 21–25. Count 3 of the complaint asserts a claim for constructive discharge, alleging that the Navy "through its challenged procedures . . . created a hostile environment, and used the realities of the 'up or out' Navy promotion system and separation process to make working conditions intolerable for certain of these plaintiffs." Id. ¶¶ 28–29. The Navy argues that the allegations in these two new claims bear almost no resemblance to the allegations in the severed ad hoc claims, and that rather than refiling the individual severed claims, the chaplains instead now seek to relitigate the systemic claims that this Court already resolved in its 2018 opinion. See MTD at 9–10. Therefore, the Navy contends, the claims are barred by the doctrine of claim preclusion. Id. The Court agrees.

To establish that the complaint's claims of retaliation and constructive discharge are claim-precluded, the Navy must show that there has been prior litigation (1) involving the same claims, (2) between the same parties, (3) with a final, valid judgment on the merits (4) issued by a court of competent jurisdiction. See Smalls, 471 F.3d at 192. As a threshold matter, there has been prior litigation: as relevant here, the Navy Chaplaincy litigation.[3] As for the four requirements, three of them are obviously met and uncontested by the chaplains. First, all of the parties to this action were also parties to the Navy Chaplaincy litigation. Second, that litigation ended with a final,

---

[3] The Court notes that it is of no consequence, for res judicata purposes, that the 2018 opinion is currently on appeal to the D.C. Circuit. See Hunt, 707 F.2d at 1497.

valid judgment on the merits (this Court's 2018 opinion and accompanying order). And third, this Court was a court of competent jurisdiction. See Navy Chaplaincy, 323 F. Supp. 3d at 40–41.

The only requirement as to which there is any dispute is whether the claims here are the "same" as the claims in Navy Chaplaincy. It is well-settled that when comparing two claims for purposes of claim preclusion, "it is the factual nucleus that gives rise to a plaintiff's claims, not a legal theory on which the claim rests that determines whether the claim may proceed." Lindsey v. District of Columbia, 609 F. Supp. 2d 71, 77 (D.D.C. 2009). In other words, a party cannot simply dress up a claim involving the same facts in new legal garb and relitigate it. The Court is persuaded that, here, that is precisely what the chaplains have attempted to do. The retaliation count of the complaint, far from having as its "factual nucleus" the particular claims of any individual plaintiff, actually has precisely the same "factual nucleus" as the systemic challenges from Navy Chaplaincy—the Navy's policies and procedures for its selection boards.

The paragraphs in the complaint containing the retaliation claims, for instance, do not focus on any plaintiff's individual factual allegations. Instead, those paragraphs allege that the Navy's selection board procedures (1) broadly discriminated against non-liturgical chaplains in promotion and retirement decisions, Compl. ¶¶ 15, 21(c); (2) "delegated unbridled power" to chaplains with denominational preferences, id. ¶ 21(d); and (3) "lack[ed] effective guarantees" that denominational preferences "would not influence selection board decisions or violate religious neutrality," id. ¶¶ 22–23. The chaplains argued these very same theories, on the very same facts, in Navy Chaplaincy, and this Court rejected each of them there. See Navy Chaplaincy, 323 F. Supp. 3d at 43–49 (rejecting plaintiffs' "denominational preference" argument); id. at 49–50 (rejecting plaintiffs' argument that "challenged procedures impermissibly vest[] . . . unbridled

discretion in a government official"); id. at 49 (rejecting plaintiffs' argument that challenged procedures improperly delegate authority to denominational representatives).

Likewise, the specific procedures that the chaplains allege existed and that they now attempt to challenge are precisely the same ones that this Court has already discussed.  For example, the chaplains challenge the Navy's alleged policy of having the Chief of Chaplains serve as selection board president; the "small number of [selection] board members"; the "anonymity of board member votes"; the requirement that one chaplain review and present a candidate's record to other board members prior to voting; and the ability of the selection board to discuss a candidate's record.  Compl. ¶ 15(a), (d).  The Court's 2018 opinion addressed and rejected the chaplains' challenge to each of these procedures.  See Navy Chaplaincy, 323 F. Supp. 3d at 47 (discussing plaintiffs' challenges to "(1) the boards' use of secret ballots; (2) the Chief of Chaplains' role as president of the selection boards and involvement in choosing each board's members; (3) the practice whereby a single board member first reviews a candidate's file and only then briefs the full board on the candidate; (4) the practice of allowing board members to discuss a candidate's file before voting and (5) a prior practice whereby each candidate's denomination was disclosed to the selection board").  The chaplains make no attempt to tie any of these challenged procedures to any of the individual plaintiffs' factual allegations, instead relying on the mere fact of the alleged existence of the procedures to support their "individual" retaliation claims.

Plaintiffs argue that claim preclusion should not apply here because the Court's 2018 opinion did not specifically address the legal theory of retaliation, and thus they cannot be barred from bringing such claims now.  See Pls.' Opp'n & Resp. to Defs.' Mot. to Dismiss ("Pls.' Opp'n") [ECF No. 31] at 13 ("The Navy has not shown where Chaplaincy addressed any element of a Retaliation cause of action, either systemic or individual.").  But in focusing on the new legal

theory undergirding their claim, rather than the facts on which that legal theory is based, plaintiffs fundamentally misunderstand how claim preclusion works.  "For purposes of claim preclusion, it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies."  Sorenson Commc'ns, LLC v. FCC, 897 F.3d 214, 226 (D.C. Cir. 2018) (internal quotation marks omitted).  The fact that plaintiffs have found a new legal theory does not change the reality that their claims, in the end, "ultimate[ly] rely on the same factual nucleus," Theodore, 772 F. Supp. 2d at 294, as plaintiffs' previous systemic claims.  After all, "claim preclusion precludes the litigations of claims, not just arguments."  NRDC v. EPA, 513 F.3d 257, 261 (D.C. Cir. 2008).  This principle makes good sense: res judicata would not do much to promote judicial efficiency if plaintiffs could simply relitigate the same old facts every time they think up a new legal argument.  Cf. id. ("[C]laim preclusion is also intended to prevent litigation of matters that should have been raised in an earlier suit." (internal quotation marks omitted)).  Accordingly, the chaplains' "retaliation" claims, as alleged, are barred by claim preclusion.

For the same reasons, the Court concludes that claim preclusion also bars the complaint's "constructive discharge" claims in Count 3, which allege that the Navy, "through its challenged procedures enabling retaliation[,] created a hostile environment."  Compl. ¶ 28.  These claims are starkly different from the constructive discharge claims that the Court severed, which contained individualized allegations of specific hostile work environments at discrete Navy work locations around the world.  See Consolidated Compl. ¶¶ 179–80, In re Navy Chaplaincy, No. 07-mc-269 (D.D.C. 2012), ECF No. 134.  Instead of focusing on such individualized allegations here, the chaplains chose to revive the same systemic challenges to the Navy's alleged procedures that the Court has already resolved.  The challenges to the Navy's selection board policies and procedures

found in the chaplains' constructive discharge claims are the same as those in their retaliation claims, and again mimic (and revolve around the same factual nucleus as) the claims that the Court's 2018 opinion rejected.  See Navy Chaplaincy, 323 F. Supp. 3d at 47.  As such, the chaplains' attempt "to mask [their] arguments under a new legal theory," Theodore, 772 F. Supp. 2d at 294, fails, and the "constructive discharge" claims, as alleged, are also barred by claim preclusion.[4]

It is true, however, that the complaint does contain a lengthy factual background for each of the twenty-five plaintiffs that even the Navy concedes could in theory support individual claims. See MTD at 12 ("To be sure, the Complaint does contain some factual allegations . . . [upon which] Plaintiffs could have asserted actual retaliation claims."); Reply in Supp. of Defs.' MTD ("Reply") [ECF No. 32] at 7 (noting that the complaint contains "a few factual allegations appropriate for a retaliation or constructive discharge claim").  Indeed, focusing on those individual facts in individual actions was what the Court hoped and expected the chaplains would do upon issuance of the Severance Order, given their representation in the joint severance motion that any remaining claims would be "refiled as separate actions."  Joint Severance Mot. at 4–5.  Because the complaint contains these allegations (albeit interspersed with impermissible systemic challenges), the Court is hesitant to dismiss the chaplains' individual claims outright.  With some trepidation, therefore, the Court will afford the chaplains one final opportunity to refile their individual retaliation and constructive discharge claims, subject to the dictates of the pre-filing injunction that the Court will discuss in Part II of this opinion.

---

[4] Additionally, as the Navy points out, see MTD at 10, the chaplains would in any event be barred by issue preclusion from litigating whether they can assert claims that the challenged procedures created a hostile work environment, as that issue was actually litigated and resolved in a prior opinion in the Navy Chaplaincy litigation.  See In re Navy Chaplaincy, 170 F. Supp. 3d 21, 39–40 (D.D.C. 2016) (after full briefing, dismissing claims that the Navy has a "culture of bias and hostility toward Non-liturgical chaplains").

## C.  The § 613a and RFRA Claims

Count 2 of the complaint asserts that "10 U.S.C. § 613a's ban on discovery is unconstitutional under the First and Fifth [A]mendments as applied to claims of unconstitutional retaliation and denominational preferences."  Compl. ¶ 26.  Count 5 of the complaint asserts that the various Navy "actions and procedures" challenged in the suit, which allegedly "result in unconstitutional retaliation and denominational preferences," violate RFRA.  Compl. ¶ 33.  The Navy argues for dismissal of the claims asserted in these counts, primarily because the claims are duplicative of the § 613a and RFRA claims already decided in the Court's 2018 opinion and are thus barred by res judicata.  Again, the Court agrees.

With respect to the RFRA claims, as with the retaliation and constructive discharge claims, the only question for purposes of claim preclusion is whether the claims are the "same" as claims resolved in the Navy Chaplaincy litigation.  And for identical reasons, the Court concludes that they are.  The RFRA claims are derivative of the retaliation and constructive discharge claims; the paragraphs of the complaint containing the RFRA claims point to the allegations in the retaliation and constructive discharge claims as the conduct supporting the chaplains' allegations that the Navy violated RFRA.  See Compl. ¶¶ 32–33 ("Plaintiffs claim the challenged actions and procedures result in unconstitutional retaliation and denominational preferences and therefore violate the Constitution, [and] statutes[, including RFRA].").  Because the Court already determined that those claims are merely a rehashing of the chaplains' prior systemic claims, so too are the RFRA claims, which once again depend on the same factual nexus of the Navy's selection board policies and procedures.  The Court's 2018 opinion granted summary judgment to the Navy on the chaplains' claims that the Navy's chaplain promotion and selection board system violated RFRA.  See Navy Chaplaincy, 323 F. Supp. 3d at 38–51.  Because those are the same claims that

the chaplains attempt to bring here, the Court determines that they are barred by claim preclusion and will dismiss them with prejudice.

As for the challenge to § 613a, which bans the disclosure of selection board proceedings in litigation, the Court notes that this is now the <u>fourth</u> time plaintiffs have attempted to challenge the constitutionality of the provision or its predecessor provision, despite repeated and explicit judicial warnings not to press the issue further after their first three attempts were unsuccessful. <u>See</u> <u>In re Navy Chaplaincy</u>, 512 F. Supp. 2d 58, 62 (D.D.C. 2007) ("Whatever wisdom may be associated with the adage 'the third time's the charm,' the plaintiffs are advised to accept this second ruling as conclusive and refrain from testing their luck a third time before this court."); <u>Navy Chaplaincy</u>, 323 F. Supp. 3d at 51 (noting that plaintiffs had failed to "heed[] that admonition" and that the "reasoning of those prior decisions [upholding the provision] remain[ed] valid").  The Court's 2018 opinion conclusively resolved the question, noting that plaintiffs had not advanced a "coherent theory supporting an unqualified right of access to information" from selection board proceedings to prove their constitutional claims.  <u>Navy Chaplaincy</u>, 323 F. Supp. 3d at 51 (internal quotation marks omitted).

Plaintiffs' only argument differentiating the present challenge from the prior challenges is that discovery is now needed to support their new ad hoc retaliation claims, and so the analysis of § 613a should somehow be different (though plaintiffs do not explain how).  <u>See</u> Opp'n at 22–23. The Court agrees with the Navy, <u>see</u> Reply at 4–5, that the Court's prior conclusion that § 613a is constitutional applies with equal force whether plaintiffs challenge the provision in litigation involving systemic claims or ad hoc claims.  As the Court stated, there is no "constitutional right to evidence in support of . . . constitutional claims." <u>Navy Chaplaincy</u>, 323 F. Supp. 3d at 51.  The chaplains have now appealed that decision to the D.C. Circuit, arguing vigorously that this Court

erred in rejecting their challenge to § 613a.  See Appellants' Opening Br. at 44–53, In re Navy

Chaplaincy, No. 19-5206 (D.C. Cir. 2020).  This Court declines to reconsider an issue presently

pending before the D.C. Circuit.  The Court therefore concludes (1) that this claim is the "same"

as a claim already resolved in the 2018 opinion, and thus plaintiffs are claim precluded from

bringing it now, and (2) that this issue was already fully litigated and necessary to the Court's

earlier decision, and thus plaintiffs are issue precluded from raising the issue again.  The Court

will dismiss the § 613a claim with prejudice.

## II.    The Surviving Claims

As noted, the Court will provide the chaplains with one final opportunity to refile, in

individual actions, their individual retaliation and constructive discharge claims.  One count of the

complaint remains to be addressed: Count 4, which alleges that "[d]efendants, through some of its

senior chaplains, illegally disapproved of, censored, or criticized the Non-liturgical religious

speech" of five of the plaintiffs.  Compl. ¶ 31.  The Navy argues that "these claims are proper ad

hoc claims, albeit improperly joined," and thus the Court should sever the claims and permit

refiling in individual actions, as originally contemplated in the Severance Order.  MTD at 13.  The

Navy further requests, however, in light of the chaplains' "repeated efforts to use newly filed cases

to relitigate issues decided in In re Navy Chaplaincy," that the Court enjoin the chaplains from

filing any new complaint without first seeking leave of this Court.  Id. at 13–14.  The Court

concludes that severance and a narrowly tailored injunction is warranted, as to both the claims in

Count 4 as well as the surviving retaliation and constructive discharge claims.

In this Circuit, "a court may employ injunctive remedies to protect the integrity of the

courts and the orderly and expeditious administration of justice."  Urban v. United Nations, 768

F.2d 1497, 1500 (D.C. Cir. 1985).  Though pre-filing injunctions most frequently issue against pro

se litigants, courts in this Circuit and others have also used them, in appropriate circumstances, against counseled plaintiffs. See, e.g., Kaempfer v. Brown, 684 F. Supp. 319, 325–36 (D.D.C. 1988) (imposing pre-filing injunction on counseled parties where they had harassed a bank attempting to develop property), aff'd 872 F.2d 496 (D.C. Cir. 1989); Eliahu v. Jewish Agency for Israel, 919 F.3d 709, 714–16 (2d Cir. 2019) (affirming pre-filing injunction on plaintiffs who received "assistance of counsel" where they had "demonstrable history of vexatious and baseless litigation"); Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1062–63 (9th Cir. 2007) (affirming pre-filing injunction on counseled plaintiff where plaintiff had used lawsuits as "a harassing device"); Feathers v. Chevron U.S.A., Inc., 141 F.3d 264, 269 (6th Cir. 1998) (affirming pre-filing injunction on counseled plaintiffs where they had a "history of repetitive and vexatious litigation"); Connor v. Stewart, 2018 WL 4169150, at *5 (W.D. Tex. Aug. 30, 2018) (imposing pre-filing injunction on counseled plaintiff where his "high volume of motions" had placed "burdens" on the court and the defendants); Clavon v. Roscoe BK Restaurant, Inc., 2012 WL 12903054, at *5–6 (C.D. Cal. Oct. 16, 2012) (imposing pre-filing injunction on attorney because the court found it "likely that counsel will continue to make frivolous claims against Defendants"); Orlando Residence Ltd. v. GP Credit Co., 609 F. Supp. 2d 813, 817 (E.D. Wis. 2009) (imposing pre-filing injunction on counseled plaintiff where he had a history of filing repeated lawsuits to evade judgments obtained against him).

Indeed, some courts have noted that counseled plaintiffs should not be given quite as much latitude in the pre-filing injunction inquiry as is "usually granted to pro se litigants," given that they have had the benefit of an attorney's advice as to the relevant law and procedural rules. Eliahu, 919 F.3d at 715. However, even in the case of counseled plaintiffs, when "fashioning an appropriate remedy" for harassing or repetitive litigation, courts must "take great care not to

15

unduly impair a litigant's constitutional right of access to the courts." In re Powell, 851 F.2d 427, 430 (D.C. Cir. 1988). Accordingly, in this Circuit, three requirements must be fulfilled before a pre-filing injunction is granted. A court must have (1) "provided notice and an opportunity to be heard"; (2) "created an adequate record for review"; and (3) "made substantive findings as to the frivolous and harassing nature of the litigants' actions." Kaempfer, 872 F.2d 496, at *3. Here, the Court will take each requirement in turn.

First, the chaplains have received notice and been provided an opportunity to be heard on the question whether a pre-filing injunction should issue. The Navy's motion to dismiss alerted the chaplains to the injunction request, see MTD at 13–17, and the chaplains' opposition brief responded to that request in detail, see Pls.' Opp'n at 28–34. Cf. Caldwell v. Obama, 6 F. Supp. 3d 31, 50 (D.D.C. 2013) (deeming first requirement satisfied where court document informed plaintiff of the possibility of injunction and plaintiff responded via argument in briefing).

Second, in evaluating whether the record is sufficient to warrant a pre-filing injunction, the Court finds that the number and content of plaintiffs' prior filings provide sufficient basis for consideration of a pre-filing injunction. The Court has reviewed the close similarities between the present lawsuit and at least four prior lawsuits that the Navy has identified, all of which were filed and pursued by plaintiffs' current counsel and all of which have the same goal: to challenge the allegedly discriminatory nature of the Navy's selection board policies and procedures. See Compl. ¶ 13 ("Plaintiffs attack Navy personnel systems' procedures and practices that grant senior chaplains unbridled authority and discretion over the promotions and careers of other chaplains with no accountability."); Consolidated Compl. ¶ 1b, In re Navy Chaplaincy, No. 07-mc-269 (D.D.C. 2012) (challenging "religious preferences and discrimination in the U.S. Navy Chaplains Corps . . . in its accession, promotion, assignment, retention and separation systems and decision

making processes"); <u>Harkness v. Sec'y of Navy</u>, 858 F.3d 437, 442, 447 (6th Cir. 2017) (describing a prior suit in which plaintiff "sought a declaratory judgment that the Navy's chaplain promotion procedures violated the Establishment Clause," and resolving another suit in which plaintiff alleged that "promotion board procedures result in denominational preferences in chaplain-promotion decisions"); Compl. ¶ 1, <u>Gibson v. U.S. Navy</u>, No. 06-cv-187 (N.D. Fla. 2006), ECF No. 1 (challenging "religious discrimination and violations of the First and Fifth Amendments and the [RFRA] in the U.S. Navy Chaplains Corps . . . promotion, accession, assignment, retention and separation systems and decision making processes").   Each of the plaintiffs in this case was also a plaintiff in one or more of the prior lawsuits.   Similarly, in the two remaining actions in the Eastern District of Virginia stemming from the instant complaint, the two severed plaintiffs—again represented by the same counsel—have twice more challenged the Navy's selection board procedures.   <u>See</u> First Am. Compl. ¶ 10, <u>Lancaster v. Sec'y of Navy</u>, No. 2:19-cv-00095 (E.D. Va. 2019), ECF No. 29 ("CH Lancaster attacks Navy personnel systems' procedures and practices . . . ."); Compl. ¶ 9(b), <u>Wilson v. Sec'y of Navy</u>, No. 2:19-cv-00515 (E.D. Va. 2019), ECF No. 1 ("CH Wilson challenges Navy and CHC specific personnel systems' procedures and practices . . . .").

As demonstrated by this very case, plaintiffs and their counsel persist in filing repetitive and duplicative complaints despite having received lengthy decisions outlining precisely why their systemic challenges fail.   <u>See, e.g.</u>, <u>Navy Chaplaincy</u>, 323 F. Supp. 3d at 43–50; <u>cf.</u> <u>Caldwell</u>, 6 F. Supp. 3d at 51 (imposing pre-filing injunction on plaintiff who persisted in filing repetitious complaints despite having received detailed "judicial decisions . . . regarding the reasons compelling the previous dismissals of his claims").   Beyond those filings, plaintiffs and their counsel have also made repetitious challenges to various rulings in the <u>Navy Chaplaincy</u> litigation.

For instance, as already mentioned, this Court has now adjudicated four separate challenges to the constitutionality of § 613a and its predecessor statute, despite repeated warnings to plaintiffs to cease further challenges.

Third, regarding the frivolous, duplicative, or harassing nature of plaintiffs' actions, the D.C. Circuit has cautioned that a pre-filing injunction "should remain very much the exception to the general rule of free access to the courts." Powell, 851 F.2d at 431 (internal quotation marks omitted). This Court takes the D.C. Circuit's caution seriously. Nonetheless, the Court finds that, in this case, plaintiffs' actions are duplicative and harassing, constituting an "unwarranted burden on the orderly and expeditious administration of justice." Smith v. Scalia, 44 F. Supp. 3d 28, 47 (D.D.C. 2014) (internal quotation marks omitted). As detailed above, plaintiffs have repeatedly filed complaints making the same substantive claims, even after a federal court has already resolved those claims. Plaintiffs and their counsel are unrepentant; indeed, they characterize their actions in filing such duplicative complaints around the country as mandatory, because forum shopping is "the duty of the attorney to his client" and an "inherent responsibility in our legal system." Pls.' Opp'n at 28; see also id. at 31 (stating that it would be "malpractice" for an attorney not to forum shop and that "nothing precludes [plaintiffs] from going to a more friendly forum" if their "major arguments are dead on arrival" in another court). Plaintiffs also assert that they are entitled to rehash issues already decided if they think the Court's decisions were "bizarre," "suggest[] prejudice," or if it was "clear [that] justice was not likely." Id. at 31. These actions harass the Navy by forcing it to repeatedly relitigate previously resolved claims and issues. See Mikkilineni v. Penn. Nat'l Mut. Ins. Co., 271 F. Supp. 2d 142, 149 (D.D.C. 2003).

Moreover, plaintiffs and their counsel apparently believe that they are justified in making false representations to a court where it serves their interests. For instance, in the joint motion for

severance, plaintiffs (through counsel) represented to this Court that they did not believe any of the requirements for joinder were met as to the ad hoc claims.  See Joint Severance Mot. at 3–4. They then expressly contradicted that assertion in the instant complaint.  Compl. ¶¶ 4–9 (arguing that joinder is appropriate).  They now justify this about-face by arguing that they had no real choice but to get the claims out of this Court as quickly as possible so they could "seek quicker resolution and relief elsewhere."  Pls.' Opp'n at 4–5.  But the Court does not take such a light view of false or misleading representations made to it by counsel, which tend to frustrate and disrupt the justice system.

Based on plaintiffs' actions thus far and their insistence that repetitious filings and forum shopping are mandatory to vindicate their interests, the Court deems it surpassingly likely that absent a pre-filing injunction, the refiling of any surviving claims will almost certainly be broadened to include challenges to the Navy's selection board policies and procedures that have already been resolved by this Court—in the 2018 opinion and again today.  See Carr v. Tillery, 591 F.3d 909, 921 (7th Cir. 2010) ("The unlikelihood, in view of the history of [plaintiff's] litigation with the defendants, that he will accept defeat gracefully suggests that the remedy may be needed in this case.").  Consequently, the Court concludes that a narrowly tailored prospective filing restriction is necessary.

The Court will sever the surviving retaliation, constructive discharge, and interference with religious free speech claims.  And it will permit plaintiffs to refile those ad hoc claims in this Court or any other appropriate district Court, in individual complaints (not joined with any other plaintiff).  However, any plaintiff who wishes to refile his or her claims in any federal court[5] must

---

[5] The Court's injunction power extends to barring plaintiffs from refiling in any federal court without leave of this Court.  See Urban, 768 F.2d at 1500 (enjoining plaintiff from "filing any civil action in this or any other federal court of the United States"); see also Crumpacker v. Ciraolo-Klepper, 715 F. App'x 18, at *20 (D.C. Cir. 2018) (affirming nationwide pre-filing injunction); Kaempfer, 872 F.2d 496, at *1 (affirming injunction barring party from

first seek leave from this Court within thirty days, that is, by not later than May 21, 2020.  To do

so, a plaintiff must file a motion with this Court that includes specific information about all prior

cases that he or she has filed against the Navy and that demonstrates that the proposed individual

complaint properly alleges only ad hoc claims of retaliation, constructive discharge, or interference

with religious free speech and does not raise any claims or issues that have already been resolved.[6]

The proposed individual complaint must be attached to the motion for leave to file.  If any plaintiff

does not file such a motion within thirty days of the issuance of this opinion and accompanying

order, his or her individual ad hoc claims will be dismissed with prejudice.

The Court has endeavored to make this injunction as narrow as possible and to do no more

than "place[] limits on a reasonably defined category of litigation because of a recognized pattern

of repetitive, frivolous, or vexatious cases within that category."  Feathers, 141 F.3d at 269.  As

such, the Court emphasizes that the injunction does not restrict plaintiffs' access to the courts

generally.  Instead, it applies only to the narrow category of litigation against the Navy for alleged

religious discrimination, within which the Court has found that plaintiffs have been engaged in

---

"commencing litigation against [a specific bank] in any forum" without first "seeking [the Court's] permission"); Martin-Trigona v. United States, 779 F.2d 72, 74 n.* (D.C. Cir. 1985) (affirming the dismissal of a case in the District Court for the District of Columbia because the plaintiff violated the District of Connecticut's order enjoining the plaintiff from filing without leave of the court "any action in any court of the United States" connected with his ongoing bankruptcy proceeding); Hall v. McAleenan, 2019 WL 2569914, at *6 (D.D.C. June 21, 2019) (noting that court has equitable power to determine whether scope of injunction extends to enjoining plaintiff from "filing any suit in courts in this district or in any other federal court," and entering injunction barring plaintiff from "filing suit in any federal court . . . without leave of this Court"); U.S. Bank Nat'l Ass'n v. Poblete, 2017 WL 598471, at *9 (D.D.C. Feb. 14, 2017) (enjoining party from "any subsequent filing in any federal court or District of Columbia Superior Court without first obtaining leave from this Court"); Davis v. United States, 569 F. Supp. 2d 91, 99 (D.D.C. 2008) (enjoining plaintiffs from "filing suit in federal court" where they had repeatedly filed cases with similar allegations in the Western District of Missouri and the District of Columbia).

[6] The Court warns plaintiffs and their counsel against pursuing the course that appears to have been taken in the remaining two actions in the Eastern District of Virginia, where the court instructed plaintiffs to file amended complaints "containing allegations pertinent to only" the individual plaintiffs' cases, yet the complaints again focus on systemic challenges to "Navy personnel systems' procedures and practices."  See, e.g., First Am. Compl. ¶ 10, Lancaster, No. 2:19-cv-00095.  The Court emphasizes that it will not grant leave to file any proposed complaint that focuses on systemic challenges of the type outlined supra, pp. 7–11.  Additionally, if plaintiffs do attempt to again revive their systemic challenges or improperly join plaintiffs together in violation of this Court's express instructions, the Court will be forced to consider appropriate sanctions under Fed. R. Civ. P. 11(c).  Cf. Sparrow v. Reynolds, 646 F. Supp. 834, 838–40 (D.D.C. 1986).

repetitive and harassing litigation.  See Wood v. Santa Barbara Chamber of Commerce, Inc., 705 F.2d 1515, 1524 (9th Cir. 1983) ("The general pattern of litigation in a particular case may be vexatious enough to warrant an injunction in anticipation of future attempts to relitigate old claims.").  The Court deems this limited constraint on plaintiffs and their counsel necessary to promote the "orderly and expeditious administration of justice."  Urban, 768 F.2d at 1500.

## Conclusion

For the foregoing reasons, the Court will grant the Navy's motion to dismiss in part and deny it in part, sever the surviving individual ad hoc retaliation, constructive discharge, and interference with religious free speech claims, and enjoin plaintiffs from refiling those claims without first seeking leave from this Court within thirty days of the issuance of this opinion and accompanying order.

/s/
JOHN D. BATES
United States District Judge

Dated: April 21, 2020